UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOANNA DYCZYNSKA,                                    **COMPLAINT**

                             Plaintiff,              Case No. 16-cv-05280

                    -against-                        Jury trial demanded

VERSACE USA, INC. and CHRISTOPHER GIUNTA,

                             Defendants.
------------------------------------------------------------------X

Plaintiff Joanna Dyczynska ("Plaintiff"), by her attorneys, Law Office of Harvey S. Mars LLC, for her complaint against defendant Versace USA, Inc. ("Versace") and Christopher Giunta (collectively "Defendants"), alleges the following:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action against Defendants for discrimination based on sex—particularly pregnancy—under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.*

2. Plaintiff was employed by Defendants from April 24, 2013 to April 1, 2015, first as a Financial Analyst and then as a Manager of Financial Planning and Analysis. During the first year of her employment, when Plaintiff reported to Monica Stevenson, Chief Financial Officer, she received positive performance reviews, a promotion with a large pay increase, and a bonus and had no disciplinary history. In May 2014, Ms. Stevenson was replaced as Chief Financial Officer by Christopher Giunta. A few months after Mr. Giunta's arrival, Plaintiff worked from home for one week and then took maternity leave. When Plaintiff returned from

maternity leave in December 2014, she experienced ongoing discrimination because of her pregnancy until her employment was unlawfully terminated on April 1, 2015.

## JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction over Plaintiff's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over Plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.*, pursuant to 28 U.S.C. § 1367(a).

5. The Southern District of New York is the proper venue pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## ADMINISTRATIVE EXHAUSTION

6. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission on July 27, 2015.

7. Plaintiff received a right-to-sue letter from the U.S. Equal Employment Opportunity Commission on April 28, 2016.

## THE PARTIES

8. Plaintiff is an individual residing at 103-11 93rd Street, Ozone Park, NY 11417.

9. Upon information and belief, Defendant Versace USA, Inc. is a New York corporation with its principal place of business at 3 Columbus Circle, 20th Floor, New York, NY 10019.

10. Upon information and belief, Defendant Christopher Giunta is an individual residing at an unknown address.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed by Defendant Versace USA, Inc. from April 24, 2013 to April 1, 2015.

12. From April 24, 2013 to May 8, 2014, Plaintiff was a Financial Analyst.

13. Plaintiff's job duties as a Financial Analyst included monthly, quarterly, and annual financial reporting, analysis, and budgeting in coordination with Business Leaders and the Chief Financial Officer.

14. On May 8, 2014, Plaintiff was promoted to Manager of Financial Planning and Analysis.

15. Plaintiff's job duties as Manager of Financial Planning and Analysis included overseeing the preparation of budgets, merchandise planning, analysis of existing and prospective retail locations, and supervision of two Analysts.

16. The regular hours during which Plaintiff was expected to work were 9:00 a.m. to 6:00 p.m., but Plaintiff regularly worked more hours, often from 9:00 a.m. to 9:00 p.m. or later.

17. Until her maternity leave in September 2014, Plaintiff regularly participated in meetings with the Chief Executive Officer, Chief Financial Officer, and other executives.

18. From April 24, 2013 to May 2014, Plaintiff reported to Monica Stevenson, Chief Financial Officer.

19. Plaintiff's relationship with Ms. Stevenson was always very positive.

20. In or around January 2014, Plaintiff learned that she was pregnant.

21. On April 24, 2014, Plaintiff received a positive performance review from Ms. Stevenson, a promotion and a bonus.

22. In or around May 2014, Plaintiff told Ms. Stevenson that she was pregnant, and Ms. Stevenson's reaction was positive.

23. In or around May 2014, Ms. Stevenson's employment with Versace ended.

24. In or around June 2014, Christopher Giunta was hired to replace Ms. Stevenson as Chief Financial Officer.

25. At the direction of the Chief Executive Officer, Plaintiff met Mr. Giunta before his employment officially began to familiarize him with Versace's current financial initiatives.

26. From May 2014 to September 2014, Plaintiff trained Mr. Giunta on the company's information systems and introduced him to the company's internal protocols.

27. From May 2014 to September 2014, in anticipation of her maternity leave, Plaintiff trained other employees on tasks for which they would assume responsibility in her absence.

28. In the months immediately preceding her maternity leave, while she was in the final stages of her pregnancy, Plaintiff worked approximately 12 hours per day to ensure the timely completion of all of the tasks and training.

29. From September 15, 2014 to September 25, 2014, Plaintiff worked from home, but continued to work the same number of hours and complete all of the tasks that she would have if she was at the office.

30. On September 26, 2014, Plaintiff was admitted to the hospital in anticipation of delivering her child.

31. On September 27, 2014, Plaintiff delivered her child.

32. From September 27, 2014 to December 19, 2014, Plaintiff took maternity leave.

33. During her maternity leave, although she was not required or expected to work, Plaintiff periodically contacted the employees who had assumed her responsibilities to ensure that all of her tasks were being completed properly.

34. Upon information and belief, Mr. Giunta discussed plans to terminate Plaintiff's employment via e-mail during her maternity leave.

35. On December 22, 2014, Plaintiff returned from her maternity leave.

36. During the first two weeks after she returned from maternity leave, there was not much activity at the office because many employees were out of the office for the holidays.

37. In or around the first full week of January 2015, Mr. Giunta told Plaintiff that she would only have approximately 30% of the responsibilities she had before her maternity leave.

38. After Plaintiff returned from her maternity leave, she was excluded from most meetings in which she had previously participated.

39. After Plaintiff returned from her maternity leave, information that was integral to her job, such as budget information from Versace's corporate headquarters in Italy and decisions affecting her team, was concealed from her.

40. Plaintiff explained to Mr. Giunta that when she reporting to Ms. Stevenson, she had many more responsibilities and clearly-defined future goals and plans.

41. Mr. Giunta responded that he "did not give a damn" what Ms. Stevenson did, that he was a CFO and "things were different," and that he did not yet have a plan for Plaintiff but would tell her when he did.

42. Despite Mr. Giunta's reduction of Plaintiff's responsibilities, relying on her ten years of professional experience in financial planning and analysis, Plaintiff proactively worked with teams in other departments to analyze financial data and develop proposals for Versace.

43. When Plaintiff presented her analysis and proposals to Mr. Giunta, he was uninterested and stated that they were not a priority.

44. Plaintiff was scheduled to be out of the office from January 19, 2015 to January 23, 2015, returning on January 26, 2015 to travel to the Dominican Republic to visit family.

45. Due to a major snowstorm, Plaintiff's flight from the Dominican Republic to New York was canceled, so she did not return to the office until January 27, 2015.

46. On January 29, 2015, Plaintiff hired a babysitter to watch her child while she was at work, but the babysitter canceled 15 minutes before her first shift.

47. As a result of the babysitter's unexpected cancellation, Plaintiff had to work from home that day.

48. Plaintiff went to the office with her child to retrieve her computer, give assignments to her subordinates, and notify Human Resources and her subordinates that she would be working from home that day.

49. Plaintiff notified Jennifer Schwartz, Human Resources Manager, that she would be working from home that day, and Ms. Schwartz did not object to this arrangement.

50. Upon information and belief, later that day, Mr. Giunta was told that Plaintiff brought her child to the office, to which Mr. Giunta responded "What the fuck?"

51. On February 6, 2015, Mr. Giunta called Plaintiff into a meeting, during which he told her to "get [her] shit together," said that he was disappointed and had concerns about her decision-making, stating that she did not notify him in advance that she was bringing her child to the office, and asked her whether she was the right individual for her job.

52. Plaintiff responded affirmatively, reminded Mr. Giunta that she had assumed Ms. Stevenson's responsibilities, in addition to her regular responsibilities, during the period between Ms. Stevenson's departure and Mr. Giunta's arrival and assumed other additional responsibilities, including training other employees to cover her during her maternity leave, and

stated that if she could do all of that during the second and third trimesters of her pregnancy, she could certainly fulfill her responsibilities now.

53. On or around February 9, 2015, Plaintiff enrolled her child at a day care facility.

54. On the evening of February 12, 2015, Plaintiff learned that the day care facility that she used would be closed on February 16, 2015, which was President's Day.

55. Plaintiff immediately contacted the Christina Acocella, Vice-President of Human Resources, requesting permission to work from home on February 16, 2015 due to her lack of childcare.

56. Ms. Acocella denied Plaintiff's request to work from home and told her to find a different day care that was open on February 16, 2015 and have three or four different backup plans for childcare.

57. Plaintiff was unable to find a day care facility that was open on February 16, 2015 because most day care facilities were closed for President's Day. A friend without experience in childcare agreed to watch her child that day, while she reported to work.

58. In or around late February 2015, Plaintiff requested permission from Mr. Giunta and Ms. Acocella to work from 8:00 a.m. to 5:00 p.m. instead of 9:00 a.m. to 6:00 p.m., pursuant to Versace's flextime policy, because her child's daycare facility closed at 6:00 p.m.  Mr. Giunta and Ms. Acocella granted Plaintiff permission to work from 8:00 a.m. to 5:00 p.m.

59. During March 2015, after Plaintiff began working on the flextime schedule, rather than the much longer hours that she had worked before her maternity leave, Mr. Giunta began to treat her even worse, further marginalizing her role, stating that he was unavailable for meetings with her, and frequently using profanity towards her.

60. In or around March 2015, Plaintiff asked Ms. Acocella twice to meet with her for a few minutes, intending to express her gratitude for granting her permission to work on a flextime schedule, but Ms. Acocella refused to meet with Plaintiff.

61. In or around March 2015, Ms. Schwartz asked Plaintiff for an updated copy of her job description, stating that Mr. Giunta had requested it.

62. On April 1, 2015, Plaintiff was called into a meeting with Mr. Giunta and Ms. Acocella, during which she was told that her position was being eliminated due to budget cuts.

63. Upon information and belief, Mr. Giunta arranged a "field trip" for all other employees in the office, so that they would not be present when Plaintiff's employment was terminated.

64. Upon information and belief, immediately after her employment was terminated, male employees assumed Plaintiff's responsibilities.

65. Upon information and belief, Plaintiff's position was not eliminated, and she was replaced by a male employee.

66. Upon information and belief, the male employee who replaced Plaintiff received a pay increase and was authorized to hire an additional member of his team.

## FIRST CAUSE OF ACTION
### Discrimination Based on Sex Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

67. All preceding paragraphs are incorporated herein by reference.

68. Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, by discriminating against Plaintiff with respect to her terms, conditions, and privileges of employment because of her sex.

69. Plaintiff was subjected to disparate treatment because of her pregnancy, culminating in the termination of her employment.

70. As a result of Defendants' violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Plaintiff has lost past and future wages and benefits and suffered emotional distress.

## SECOND CAUSE OF ACTION
### Discrimination Based on Sex Under the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*

71. All preceding paragraphs are incorporated herein by reference.

72. Defendants violated the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, by discriminating against Plaintiff with respect to her terms, conditions, and privileges of employment because of her sex.

73. Plaintiff was subjected to disparate treatment because of her pregnancy, culminating in the termination of her employment.

74. As a result of Defendants' violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, Plaintiff has lost past and future wages and benefits and suffered emotional distress.

## THIRD CAUSE OF ACTION
### Discrimination Based on Sex Under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.*

75. All preceding paragraphs are incorporated herein by reference.

76. Defendants violated the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.*, by discriminating against Plaintiff with respect to her terms, conditions, and privileges of employment because of her sex.

77. Plaintiff was subjected to disparate treatment because of her pregnancy, culminating in the termination of her employment.

78. As a result of Defendants' violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, *et seq.*, Plaintiff has lost past and future wages and benefits and suffered emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding Plaintiff back pay, front pay, compensatory damages, punitive damages, costs, attorney's fees, prejudgment interest, postjudgment interest, and such other relief as this Court deems just.

Dated:  New York, New York
        July 5, 2016

                                          LAW OFFICE OF HARVEY S. MARS LLC

                                        By:  /s/ Jacob Korder
                                                Harvey S. Mars (HM6107)
                                                Jacob Korder (JK7008)
                                                Attorneys for Defendants
                                                322 West 48th Street, 6th Floor
                                                New York, NY 10036
                                                (212) 765-4300
                                                jkorder@harveymarsattorney.com